Chicago & Illinois Midland Railway Company, a Corporation, Plaintiff, v. Pillsbury Mills, Inc., a Corporation, Evans Construction Co., a Corporation, Novelli Construction Co., a Corporation, and Krueger Construction Co., Inc., a Corporation, Defendants.

Chicago & Illinois Midland Railway Company, a Corporation, Plaintiff-Appellee, and Novelli Construction Co., a Corporation, Defendant-Appellee, v. Pillsbury Mills, Inc., a Corporation, Defendant-Appellant.

Gen. No. 10,517.

Fourth District.

April 27, 1964.

Hershey and Bliss, of Taylorville, and R. G. Heckenkamp, of Springfield, for Pillsbury Mills, Inc., defendant.

Graham and Graham, and C. D. Forth, both of Springfield, for appellee.

WRIGHT, JUSTICE.

This action was instituted by the plaintiff, Chicago & Illinois Midland Railway Company, on the theory of indemnity to recoup $10,168.14 which it paid out to

settle a claim asserted against it under the Federal Employers' Liability Act by an employee, Curtis Barron, who was injured when he tripped or stumbled over an old railroad tie lying on switch tracks owned by the defendant, Pillsbury Mills, Inc., while he was engaged in switching cars on the tracks.

The accident occurred on a layout of railroad switch tracks located on the property of and owned by the defendant, Pillsbury Mills, Inc. These switch tracks had been torn up and relaid and new ones installed only a short time before the accident pursuant to a contract for this and other construction work between the defendant, Pillsbury Mills, Inc., as owner, and the defendant, Evans Construction Co., a corporation, as general contractor. The necessary grading, excavating and ballasting was done by Krueger Construction Co., a corporation, under a subcontract and the new tracks were laid and the new ties furnished under a subcontract by Novelli Construction Co., a corporation.

Each of the defendants were sued separately in separate counts and all were sued jointly in the fifth count of the complaint as finally amended. For the sake of brevity, the defendants will hereafter be referred to as "Pillsbury," "Evans," "Krueger" and "Novelli."

The case was tried before the court without a jury and at the close of plaintiff's evidence the four defendants made separate motions for judgment. The court allowed the motion of Evans, Novelli and Krueger but denied Pillsbury's motion. At the close of all of the evidence, the court found in favor of the plaintiff and entered judgment against defendant, Pillsbury, for $10,168.14 and costs. From this judgment defendant Pillsbury appeals.

Prior to August 2, 1955, Evans was engaged as general contractor by Pillsbury to expand its business

facilities in the City of Springfield, Illinois, by constructing some new warehouses. In connection with this project, it was necessary that some of the existing switch tracks be moved and relaid and additional new tracks built to provide railroad switching facilities into the new warehouses. All of the excavating, grading and establishment of levels for the new tracks was done by defendant, Krueger, under a subcontract, and all of the new ties were furnished and the new tracks laid by Novelli under a subcontract.

The work was completed sometime the latter part of July, 1955, and an inspection of the project was made by plaintiff's Chief Engineer, M. E. Peterson, along with a Mr. Loeb, Superintendent for Evans, and the foreman for Novelli, to ascertain whether the tracks were constructed according to plan and whether or not the tracks were safe for plaintiff's crew to start switching railroad cars to serve Pillsbury's warehouses. Following the inspection, Mr. Peterson made a report to the plaintiff railroad in which no footing hazards were observed. The exact date of this inspection was not established by the evidence, but Mr. Peterson testified that it was made the latter part of July and could have been as late as July 31st.

On the night of August 1, 1955, the plaintiff began to use the rehabilitated and new switch tracks for the purpose of switching loaded and unloaded box cars to and from Pillsbury's warehouses. To perform this service, a switch engine with an engineer, fireman and a crew of three switchmen were being used. About 4 o'clock on the morning of August 2, 1955, while switching boxcars on the switch tracks in question, Curtis Barron, foreman of the switching crew, alighted from a moving boxcar and stumbled over an old railroad tie lying on top of and across the rails of adjacent tracks and fell to the ground sustaining injuries. This old railroad tie was lying just south of a

376

driveway across the switch tracks, which led from the south end of the scalehouse located to the west of the tracks. The old railroad ties that were removed from the switch tracks during the construction were piled up next to the scalehouse.

Defendant first contends that the plaintiff failed to prove by a preponderance of the evidence that it was guilty of only passive negligence in allowing the condition to arise by which their employee was injured. The rule against indemnity between joint tort-feasors does not apply between parties where one is the active and primary wrongdoer and the other bears only a passive relationship to the cause of injury. Moroni v. Intrusion-Prepakt, Inc., 24 Ill App2d 534, 165 NE2d 346; John Griffiths & Son Co. v. National Fireproofing Co., 310 Ill 331, 141 NE 739. A plaintiff may recover under the theory of implied indemnity from a third party for payment made by the plaintiff to its employee, pursuant to the Federal Employers' Liability Act, where the plaintiff is guilty only of passive negligence and the third party is guilty of active negligence causing the injury. Gulf, M. & O. R. Co. v. Arthur Dixon Transport Co., 343 Ill App 148, 98 NE2d 783. We believe that under the evidence adduced at the trial, the trial court properly found that the plaintiff, Chicago & Illinois Midland Railway Co., was guilty of no more than passive negligence by allowing the condition to arise which caused injury to its employee, Curtis Barron.

Defendant further argues that the plaintiff failed to prove by a preponderance of the evidence that the defendant, Pillsbury, was guilty of any negligence as charged against it in the second amended complaint, which proximately caused the injury sustained by the plaintiff's employee, Barron.

The second amended complaint under which the plaintiff seeks to recover alleges that the defendant:

(a) Negligently and carelessly, through its employees, agents, servants and others it had employed for the maintenance and construction aforesaid, allowed a railroad tie to be placed alongside the track and in the pathway of plaintiff's employees who were engaged in serving defendant with loaded and empty cars. (b) Negligently and carelessly, through its employees, agents, servants and others it had employed for the said maintenance and construction allowed a railroad tie to be placed and remain in the path of plaintiff's employees who were engaged in serving the defendant with loaded and empty cars.

It is undisputed in the evidence that the railroad switch tracks here in question were owned by the defendant, Pillsbury, and were located on its land. It is also uncontradicted that plaintiff railway company, through and by its agents and employees, at the time of the injury in question was moving railroad cars over the tracks of the defendant for the purpose of servicing defendant's warehouses and was, therefore, a business invitee.

The law imposes upon the owner of premises a duty to exercise due care to keep such premises in a safe condition for business invitees. Ellguth v. Blackstone Hotel, Inc., 408 Ill 343, 97 NE2d 290. A land owner is liable for injuries sustained on his premises by a business invitee as a result of the existence of an unsafe condition on the premises, which the land owner knows about or which he in the exercise of due care should have known about, and the duty to inspect premises to learn of dangerous conditions or defects cannot be shifted to the invitee. Blue v. St. Clair Country Club, 7 Ill2d 359, 131 NE2d 31. The rule is well stated in Restatement of Torts, Vol II, sec 343(f):

"A possessor who holds his land open to others for his own business purposes, must possess and

exercise a knowledge of the dangerous qualities of the place itself and the appliances provided therein, which is not required of his patrons."

The evidence in the record before us discloses that the new warehouses and the switch track layout to be used for the purpose of switching railroad cars to and from the defendant's warehouses was completed sometime in the latter part of July, 1955, and that the project was inspected by M. E. Peterson, Chief Engineer for the plaintiff railway company, during the latter part of July. At the time Mr. Peterson made his inspection, he was accompanied by a Mr. Loeb, representative of Evans, and the foreman for Novelli.

There is no evidence in the record that the defendant, Pillsbury, made any inspection whatsoever as to the condition of the switch track layout after the work was completed and prior to the injury sustained by Barron on August 2, 1955. Old switch tracks were repaired and rebuilt and new switch tracks were built by the contractor for defendant, Pillsbury. In performing this work, old ties were removed from the switch tracks and new ones installed and the old ties were piled up next to the scalehouse west of the switch tracks. While the evidence is not clear, it appears that the old ties were piled a distance of some sixty to seventy-five feet west of the tracks. The repair and reconstruction of this switch track layout was a major project that resulted in numerous changes being made and unquestionably required old material to be removed from the premises and new material to be brought on the premises. Under these circumstances, we believe that the defendant, Pillsbury, should have foreseen that some of the old or new ties or other material used in completing the work might have been left on or near the tracks creating a footing hazard rendering the premises unsafe for the employees of the plaintiff, and that Pillsbury had the duty

379

to make an inspection of the premises prior to their use to learn of such danger.

Defendant, Pillsbury, argues that since a representative of Evans, the general contractor, and the foreman for Novelli was present at the time the inspection was made by Peterson, Chief Engineer of the plaintiff railway company, it could rely upon the inspection made by Peterson and was not required to make an independent inspection as a matter of law. With this contention, we cannot agree for the reason that the representatives of Evans and Novelli, who accompanied Mr. Peterson at the time he made the inspection for the railroad company, were not employees of defendant but of Evans and Novelli, the general contractor and one of the subcontractors. Pillsbury had the duty to make its own inspection to ascertain if the premises were safe for use by its business invitees and could not rely upon an inspection made by the business invitee or someone else. Blue v. St. Clair Country club, supra.

██ Defendant further contends that the plaintiff railroad failed to prove by a preponderance of the evidence that its employee, Curtis Barron, was free from contributory negligence immediately before and at the time of the injury in question. The question of contributory negligence is generally one of fact for the court in cases tried before the court without a jury. It becomes a question of law only when upon a consideration of all of the evidence it appears that there has been a complete failure of proof as to this element of the plaintiff's case. Before a court can find as a matter of law that a plaintiff cannot recover because of his contributory negligence, it should be able to say that all reasonable minds must agree that the plaintiff's injury resulted from his own negligence. Mattson v. Takin Bros. Freight Lines, Inc., 42 Ill App2d 425, 192 NE2d 406; Edwards v. Martin,

2 Ill App2d 34, 117 NE2d 864. The rule has been often stated that the findings of the trial court on questions of fact in cases submitted for trial without a jury should not be disturbed unless such findings are contrary to the manifest weight of the evidence. Horns v. Johnson, 17 Ill App2d 314, 149 NE2d 437. After reviewing the evidence presented at the trial of this case, we cannot say that the finding of the trial court that the plaintiff's employee, Curtis Barron, was free from contributory negligence immediately before and at the time of his injury was against the manifest weight of the evidence.

The trial judge filed a memorandum opinion in this case in which he found that the only inspection made of the switch track layout after its completion was the one made by Peterson sometime during the last week of July, 1955, and that there was no evidence of any inspection being made other than the one made by Peterson, Chief Engineer for the plaintiff railway company, prior to the time of the injury on August 2, 1955, and further found that the defendant, Pillsbury, did not by the evidence satisfy the burden of showing that it used due care to keep its tracks in a reasonably safe condition for the plaintiff railroad and its employees, and that the injury took place by reason of plaintiff's passively allowing the condition to arise by which their employee was injured and the active negligence of defendant, Pillsbury, and further found that plaintiff's employee, Barron, was not guilty of contributory negligence and that the settlement made with him by plaintiff railroad, pursuant to the Federal Employers' Liability Act, was reasonable.

A thorough consideration of all of the evidence in the record before us leads to the inescapable conclusion that the judgment in this case is just and proper and is not against the manifest weight of the evidence, and as a reviewing court we will accept the

findings of the trial judge upon questions of fact unless such findings are against the manifest weight of the evidence. Floyd v. Estate of Smith, 320 Ill App 171, 50 NE2d 254. The judgment of the trial court is affirmed.

Affirmed.

DOVE, P. J. and REYNOLDS, J., concur.