EARL J. HOGAN, Plaintiff, *v.* ILLINOIS TERMINAL RAILROAD CO., Defendant and Third-Party Plaintiff-Appellee.—(GRANITE CITY STEEL CO., Third-Party Defendant-Appellant.)

Fifth District   No. 77-374

Opinion filed March 27, 1979.—Supplemental opinion filed on denial of rehearing May 14, 1979.

· Robert W. Wilson, of Burroughs, Simpson, Wilson, Hepler and Broom, of Edwardsville, for appellant.

Carl W. Lee and Terry N. Brown, both of Gundlach, Lee, Eggmann, Boyle & Roessler, of Belleville, for appellee.

Mr. JUSTICE KUNCE delivered the opinion of the court:

This appeal is taken from a judgment of the Circuit Court of Madison County in favor of third-party plaintiff Illinois Terminal Railroad Co., notwithstanding a jury verdict for third-party defendant Granite City Steel Co.

The case arises out of an on-the-job injury suffered more than 12 years ago by Earl J. Hogan, an employee of Illinois Terminal Railroad. The litigation was complex, involving numerous parties and pleadings, and the record before us is voluminous. We set forth only those facts necessary to explain the result which we reach on this appeal.

At about 9 p.m. on March 15, 1966, Hogan, a conductor-switchman for the railroad, was attempting to complete a switching operation when the switch handle came off in his hands. As a result, he fell down an embankment and suffered serious permanent injuries. The switch was located on access tracks between Illinois Terminal's tracks and property leased from the Bi-State Development Agency by Granite City Steel.

Hogan sued his employer, Illinois Terminal, under the Federal Employees Liability Act (45 U.S.C. §§51-60), alleging, *inter alia*, that the railroad had failed to furnish him with a reasonably safe place to work. After denying the material allegations of the complaint, Illinois Terminal filed a third-party complaint against Granite City alleging that Illinois Terminal had no right to control the area where Hogan's injuries occurred, that Granite City was responsible for the maintenance of the area, and that Illinois Terminal's negligence, if any, was merely passive, while that of Granite City was active and the sole proximate cause of Hogan's injuries.

Hogan's suit against the railroad was eventually settled for $116,432.33. At the close of the railroad's evidence in the third-party action, Granite City moved for a directed verdict on the grounds that Illinois Terminal had been guilty of active negligence and had failed to prove its employee's freedom from contributory negligence. This motion was denied, as was a similar motion at the close of all the evidence. The court reserved its ruling on the railroad's motion for directed verdict. The jury returned a verdict in favor of third-party defendant Granite City Steel, and answered in the affirmative the following special interrogatory: "Do you find from your consideration of all the evidence that the acts or omissions of Illinois Terminal Railroad Co., its officers, agents and employees actively caused or contributed to cause plaintiff Earl Hogan's injury?"

Upon the filing of a post-trial motion by Illinois Terminal, the court

granted the motion for directed verdict upon which it had previously reserved its ruling, set aside the jury's verdict, and entered judgment *n.o.v.* against Granite City Steel for $116,432.33 plus costs.

On this appeal, Granite City Steel argues that the trial court erred in entering judgment *n.o.v.* against it and in failing to grant its motion for directed verdict at the close of Illinois Terminal's case.

■■ Under the *Pedrick* standard, "verdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 514.) Therefore, in order to decide the first issue raised, we must view all of the evidence in the light most favorable to the defendant, Granite City Steel Co., and determine whether that evidence so overwhelmingly favors the plaintiff, Illinois Terminal Railroad Co., that no contrary verdict could ever stand. Viewed in that light, we think that the evidence here clearly shows that the court below erred in granting judgment *n.o.v.*

Granite City Steel and Illinois Terminal had, the evidence reveals, developed an informal system for maintenance and repair of access trackage, such as the area involved in this case, which did not lie within Granite City's leasehold. Generally, repairs would be done by the Illinois Terminal maintenance crew after receiving a purchase order from Granite City Steel. Repair work would sometimes be effected on the promise that a purchase order was forthcoming. In an emergency, where prior authorization was unobtainable, the crew would effect the repair and subsequently seek a purchase order. Granite City Steel had issued a blanket purchase order for the oiling of switches, in effect at the time of the incident in question here, pursuant to which Illinois Terminal personnel oiled, cleaned, adjusted, and inspected switches. These procedures required throwing of the switch, during which process one could discern whether or not the switch was loose. There is no evidence that Illinois Terminal's section foreman had ever entered a bad order report on the switch in question, even though it had been oiled as recently as January or February of 1966.

Hogan, the injured employee, had been aware of the defective condition of the switch prior to his injury. He had reported the defective switch to his assistant trainmaster, conductor, and yardmaster. The generally unsafe condition of the area in which the switch was located had been reported to railroad personnel numerous times. There was also testimony that the assistant trainmaster for Illinois Terminal had reported the defective nature of the switch to one "Archie" at Granite City Steel prior to Hogan's injury. However, Arshag Astorian, Granite City's dock

foreman, testified that at no time during 1965 or 1966 did he receive notification of a defective switch from Illinois Terminal employees.

■ We think that there was ample evidence in the record from which the jury could find that Illinois Terminal was guilty of active negligence, precluding indemnification. The jury could have found that Illinois Terminal did not inform Granite City Steel of the dangerous condition of the switch. It could have found that Illinois Terminal informed Granite City Steel of the dangerous condition of the switch, but then acquiesced in the failure to correct the condition over a long period of time. (See section 95 of the Restatement of Restitution (1937).) In any event, we cannot say that all the evidence viewed most favorably to Granite City Steel so overwhelmingly favors Illinois Terminal that the jury's verdict, and the consistent answer to the special interrogatory, could never stand. Therefore, the court erred in granting judgment *n.o.v.* for Illinois Terminal.

Appellee contends in this court that the instant case is essentially the same as *Hayes v. Illinois Terminal R.R. Co.* (5th Dist. 1973), 15 Ill. App. 3d 92, 303 N.E.2d 625, *appeal denied* (1974), 55 Ill. 2d 601. We cannot agree. In *Hayes*, the injury occurred on a hazardous trestle constructed by the steel company on property within its leasehold. The railroad had no control over the construction of the trestle or its maintenance. This court held that there were no facts revealed in the record upon which the finding that the railroad was guilty of active negligence could ever stand; therefore, a directed verdict in favor of the steel company was affirmed.

■ As previously indicated, in the instant case there was substantial evidence which tended to show that the railroad could have corrected the switch under the general purchase orders, and that it acquiesced in the continuation of the dangerous condition. Viewed most favorably to Granite City Steel, the evidence herein did not show that "qualitative distinction between the negligence of the two tortfeasors" so overwhelmingly favored Illinois Terminal that no verdict for the steel company could ever stand. *Chicago & Illinois Midland Ry. Co. v. Evans Construction Co.* (1965), 32 Ill. 2d 600, 603, 208 N.E.2d 573, 574.

■ Because we conclude that the court below erred in entering judgment notwithstanding the verdict, we need not reach the second issue raised by the appellant. We feel constrained to point out, however, that Granite City Steel is correct in its contention that a third-party plaintiff seeking indemnification after settlement of an F.E.L.A. claim against it by an employee does have the burden of pleading and proving the employee's freedom from contributory negligence. See IPI Civil No. 500.10, and the comment to IPI Civil No. 500.07; *Chicago & Illinois Midland Ry. Co. v. Pillsbury Mills, Inc.* (4th Dist. 1964), 47 Ill. App. 2d 373, 198 N.E.2d 126, *rev'd on other grounds sub nom. Chicago & Illinois Midland*

*Ry. Co. v. Evans Construction Co.* (1965), 32 Ill. 2d 600, 208 N.E.2d 573; Annot., 6 A.L.R. 3d 1307 (1966).

For the foregoing reasons, the judgment of the Circuit Court of Madison County is reversed, and the cause is remanded to that court for entry of judgment on the jury's verdict.

Reversed and remanded with directions.

JONES and KARNS, JJ., concur.

### SUPPLEMENTAL OPINION ON DENIAL OF REHEARING

Mr. JUSTICE KUNCE delivered the opinion of the court:

We had assumed that the language of the final sentence of our original opinion conveyed our intention that the trial court's judgment be reversed outright, that the cause be remanded solely for entry of judgment upon the jury's verdict, and that there be no new trial. Apparently, it did not. The appellee has filed a petition for rehearing contending that the cause should be remanded for a new trial in conformity with the conditional order of the trial court.[1]

In entering its conditional order, the trial court was responding to the mandate of section 68.1(6) of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 68.1(6)), which provides:

"The court must rule upon all relief sought in all post-trial motions. Although the ruling on a portion of the relief sought renders unnecessary a ruling on other relief sought for purposes of further proceedings in the trial court, the court must nevertheless rule conditionally on the other relief sought by determining whether it should be granted if the unconditional rulings are thereafter reversed, set aside or vacated. The conditional rulings become effective in the event the unconditional rulings are reversed, set aside or vacated."

The fact that the trial court did so rule, however, does not end the matter and require that this court concur in the lower court's conditional ruling. Supreme Court Rule 366(b)(2)(iv) (Ill. Rev. Stat. 1977, ch. 110A, par. 366(b)(2)(iv)) governs our review of the such conditional rulings in jury cases. The rule provides:

"The reviewing court, if it determines to reverse an unconditional ruling of the trial court on a post-trial motion, may review and determine any conditional rulings made by the trial court on other

---

[1] "That Plaintiff's motion for new trial be and the same is hereby granted in the event that judgment for the Plaintiff is hereafter reversed, set aside or vacated on appeal."

questions raised by the motion. No cross-appeal is required."

We have reviewed the record and find no merit to Illinois Terminal's motion for new trial. In fact, as we suggested in the next-to-last paragraph of our original opinion, errors were committed which were to Illinois Terminal's benefit.

The salient propositions urged by the appellee in support of its alternative post-trial motion for a new trial, that the verdict is contrary to the overwhelming weight of the evidence and that it is contrary to the law, were necessarily considered and disposed of in our opinion. If we followed appellee's argument in its petition to send this cause back for a new trial because appellant raised no issues as to the conditional order for a new trial in this appeal, the decision of the trial court would be the potential subject of another appeal. As Mr. Justice Ryan pointed out in *Franks v. North Shore Farms, Inc.* (1st Dist. 1969), 115 Ill. App. 2d 57, 74, 253 N.E.2d 45, 54:

> "The history of our present section 68.1 of the Civil Practice Act discloses a studied attempt by the legislature and by the Supreme Court to prevent the necessity of multiple appeals on motion pertaining to post-trial relief."

As the court did in *Franks*, we deem it advisable for this court, pursuant to its authority as cited, to pass upon appellee's motion for a new trial even though appellant did not argue it before us. .

A new trial would serve no useful purpose other than to rehash the same facts presented in the record already before us. We have already found those facts sufficient to show the appellee guilty of active negligence and therefore not entitled to a judgment over against appellant.

Accordingly, for the foregoing reasons, the petition for rehearing is denied.

Petition denied.

JONES and KARNS, JJ., concur.